**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NOBLE U. EZUKANMA,** | ) | |
| **ID # 49684-177,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:20-CV-318-B-BH** |
| **vs.** | ) | **No. 3:15-CR-254-B(1)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 10, 2020 (doc. 1), should be **DENIED** with prejudice.

## I.    BACKGROUND

Noble U. Ezukanma (Movant) challenges his federal conviction and sentence in Cause No. 3:15-CR-254-B(1).  The respondent is the United States of America (Government).

### A.    Conviction and Sentencing

After initially being charged by indictment along with others, Movant was charged by superseding indictment with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1349 and 1347 (Count One), and six counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts Two through Seven).  (*See* docs. 3, 203.)[2]  Movant pled not guilty, and after a five-day jury trial in March 2017, he was found guilty on all seven counts of the superseding indictment.  (*See* docs. 256, 396-400.)  By judgment dated September 14, 2017, he

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:15-CR-254-B(1).

was sentenced to a total aggregate term of 200 months' imprisonment, to be followed by a three-year term of supervised release.  (*See* doc. 363 at 1-4.)[3]  He was also ordered to pay restitution in the amount of $34,003,151.24, jointly and severally with his co-defendants, and an assessment of $700.  (*See id.* at 6-7.)  The United States Court of Appeals for the Fifth Circuit (Fifth Circuit) affirmed the judgment on November 28, 2018.  *See United States v. Ezukanma*, 756 F. App'x 360 (5th Cir. 2018).  Movant did not file a petition for a writ of certiorari with the Supreme Court.

### B.    **Substantive Claims**

Movant asserts three grounds of ineffective assistance of counsel:

(1) Trial counsel ineffectively assisted [Movant] by inaccurately advising him about the advantages and disadvantages of testifying in his defense;

(2) Trial counsel ineffectively assisted [Movant] by failing to object to testimony relaying inadmissible hearsay and violative of the Sixth Amendment's Confrontation Clause; and

(3) Trial counsel ineffectively assisted [Movant] by failing to interview Delia Brandt and call her as a witness.

(No. 3:20-CV-318-B-BH, doc. 1 at 7.)  The Government filed a response on June 3, 2020.  (*See id.*, doc. 10.)  Movant filed a reply on July 20, 2020.  (*See id.*, doc. 14.)

### C.    **Evidentiary Hearing**

An evidentiary hearing regarding Movant's first and third grounds for relief was held on August 12, 2021, at which Movant, his former trial counsel, and Delia Brandt (Brandt) testified.

#### 1.  **Counsel**

Counsel testified that in preparation for trial, he and Movant discussed whether Movant would testify; his initial impressions based on discussions with him were that Movant had a compelling life story, which would show he had no reason to commit the fraudulent conduct with

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

which he was charged. (*See* No. 3:20-CV-318-B-BH, doc. 22 at 10-11, 38.) As the case progressed, some problems arose, such as whether relevant documents had been signed by Movant, and whether an expert could credibly say he did not sign those documents. (*See id.*, doc. 22 at 38, 84-87.) He had several discussions with Movant about problems that would arise during cross-examination, as well as his testimony and potential testimony to cover up or negate some of the problems. (*See id.*, doc. 22 at 39.) There were two primary issues that counsel thought would be particularly damaging at trial if they were allowed to come in, as they would undermine the defense's theory that Movant did not have a motive to commit the charged fraud. (*See id.*, doc. 22 at 12-13.) Those issues were: (1) Movant's prior failure to pay child support, resulting in a family court contempt order and incarceration; and (2) billing irregularities and fraudulent billing at Alpha Pulmonary, which was another one of Movant's healthcare practices. (*See id.*, doc. 22 at 13-14, 30.) Because the Court ruled that these issues would be excluded, but that they could come in at trial if the door was opened by the defense or the issues otherwise became relevant, counsel stated that he had to be very careful about the things he presented at trial. (*See id.*, doc. 22 at 13.) After the pretrial hearing, counsel told Movant about the impact that those issues would have if they were allowed in at trial, and that they were fortunate the Court was keeping the issues out because they were in trouble if they came in. (*See id.*, doc. 22 at 13, 21, 39, 63-64, 91.)

Regarding the failure to pay child support and resulting incarceration, counsel testified that Movant's incarceration for failing to pay his child support obligations would have gone against the defense's theory and showed motive for committing fraud; counsel also believed the fact that Movant had been incarcerated in the past would damage the desired perception of him to the jury as a board-certified doctor. (*See id.*, doc. 22 at 24-26.) If Movant had testified and was cross-examined on the child support issue, counsel believed he had a legitimate objection that the

probative value of the evidence was outweighed by its prejudicial effect; based on the Court's statements at the pre-trial hearing, however, he thought that the evidence was going to come in at trial if the defense opened the door.  (*See id.*, doc. 22 at 26-27.)  He did not think that he could have presented Movant's testimony without opening the door, but there was a possibility that he could have tried to do so.  (*See id.*, doc. 22 at 27-29.)  Regarding billing issues at Alpha Pulmonary, counsel did not have a specific recollection of the evidence that the Government would have presented to show that Alpha Pulmonary's billing was irregular or fraudulent, but the Government showed him enough in reverse proffers for counsel to conclude there would be problem if the issue came in at trial.  (*See id.*, doc. 22 at 20-22.)

Counsel stated that Movant had explanations or responses to some of the incriminating pieces of evidence presented at trial; had he testified at trial, the essential basis of Movant's testimony would be that he knew a co-conspirator was billing Medicare under his National Provider Identification (NPI) number, but he did not know that the billing was fraudulent and that the patients did not need the home health care indicated in the medical documents. (*See id.*, doc. 22 at 30-34, 50.)  He did not believe that Movant's proposed testimony that he did not know what was going on was as important or as compelling for the jury as his testimony about his life story would have been.  (*See id.*, doc. 22 at 28, 49-50.)  Counsel decided that it would be a mistake for Movant to testify, and he stated that Movant was of the same mindset and agreed it would be better if he did not testify.  (*See id.*, doc. 22 at 34.)  Counsel and Movant discussed Movant's testimony again when it was close to the point in trial when the defense would have to present its case; they discussed the burden of proof, problems with the testimony, the credibility of the Government's witnesses up to that point, and the sufficiency of the evidence to satisfy the burden.  (*See id.*, doc. 22 at 40, 44.)  He also discussed with Movant the problems he saw with the Government's case,

but he did not quantify for Movant the likelihood of an acquittal by the jury or affirmatively express that a reasonable doubt had been raised because he did not know what the jury would do or if they had a reasonable doubt. (*See id.*, doc. 22 at 44-45, 47, 58-60.)  They discussed the benefits and detriments of testifying, and counsel explained to Movant that if the jury did not believe the Government beyond a reasonable doubt, he would be acquitted, and that it was his opinion that Movant should not testify based on everything that happened at trial up to that point, to which Movant stated something to the effect that the Government had not met its burden beyond a reasonable doubt and agreed he would not testify. (*See id.*, doc. 22 at 41-44, 48-49, 60-61, 90-91.) Counsel testified that he did not have an opinion about Movant's assessment; he did not know if it was an erroneous assessment of the strength of the Government's case or whether it might have been wrong, and he did not feel he needed to provide his own assessment of the strength of the Government's case. (*See id.*, doc. 22 at 61-62.)

Counsel also testified about his reasons for not interviewing or calling Brandt as a witness at trial.  Before trial, Movant told counsel that Brandt, who was doing some work for Movant at one of his practices, notified and talked to him about improper billing;  after Movant reviewed the billing with her, he called a co-conspirator in Brandt's presence to tell her to stop the improper billing, and the co-conspirator said something to the effect that she would stop or take care of the matter.  (*See id.*, doc. 22 at 68-69.)  After hearing this information from Movant, counsel had reservations and did not think it would help the defense, given that Brandt was able to identify millions of dollars in billing issues while working in Movant's practice for a limited period of time, and the suspicious timing of the event.  (*See id.*, doc. 22 at 69-73, 76.)  Counsel did not contact Brandt before deciding they would not use her for the defense based on the information he received from Movant, and his belief that Movant's claim that he was unaware of the fraudulent

billing at the time of the exchange with Brandt did not ring true, given the context in which Movant conveyed it to him, i.e., after a reverse proffer, and the manner in which the call was conducted. (*See id.*, doc. 22 at 71-73, 76, 80-83.)  He acknowledged that he could have made a more thorough assessment of the credibility of Movant's call with Brandt if he had interviewed her, but he also testified that nothing in her affidavit submitted in support of this habeas action changed his opinion regarding her; he believed her testimony could have opened the door to the excluded testimony that was central to his decision that Movant should not testify.  (*See id.*, doc. 22 at 83, 90.)

### 2.  Movant

Movant testified that when he and counsel were preparing to go to trial, they did not initially have any formal discussions about Movant testifying at trial, although he would bring up it up.  (*See id.*, doc. 22 at 111-12.)  They had one discussion during which counsel told him that Movant's defense to the Government's argument would be when he took the stand and testified; counsel also would not give him information about how the case was going because counsel told him he wanted his testimony to be about exactly what he knew and how he remembered it, not what he learned during the case.  (*See id.*, doc. 22 at 112-13.)  Movant understood and expected that he would testify because there was no other way for him to tell the jury his understanding of what happened.  (*See id.*, doc. 22 at 113-14.)

Before the Government rested its case, Movant and counsel had a discussion in counsel's office about Movant testifying.  (*See id.*, doc. 22 at 116.)  Following three days of evidence presented by the Government at trial, counsel said that he was surprised the Government did not have any evidence to show Movant's guilt and that the Government had not carried its burden. (*See id.*, doc. 22 at 116-17.)  Later that evening, Movant met counsel at counsel's office, where counsel told him he could not testify because the Government had not proven its case beyond a

reasonable doubt and carried its burden, and because counsel had raised a reasonable doubt by showing the jury document signatures that he hoped they would notice were forged.  (*See id.*, doc. 22 at 117-18.)  Movant disagreed, and counsel told him that if he testified, the jurors would not believe him because they did not like him since he was a foreigner and had gotten involved with the Government; counsel also told him that attorneys who let their clients testify were in cahoots with the Government and Court.  (*See id.*, doc. 22 at 118-19, 159.)  Movant kept telling counsel that if he did not tell the jury his story, they would not know it, and insisted that he needed to testify.  (*See id.*, doc. 22 at 119, 156-57.)  The Government rested the next day, and Movant and counsel did not have any further discussions before the defense rested.  (*See id.*, doc. 22 at 114-15, 119.)  Movant did not tell counsel that he thought the Government had not proven its case beyond a reasonable doubt, and he did not tell him he did not want to testify.  (*See id.*, doc. 22 at 120-21.)  Counsel did not call him to testify after his insistence that he needed to testify.  (*See id.*, doc. 22 at 156.)  If he had testified, he would have said that he did not know his co-conspirators were submitting false Medicare bills using his name and his NPI number.  (*See id.*, doc. 22 at 127-29.)  Further, he denied knowledge of fraudulent billing before 2012, he denied the testimony and evidence from various witnesses and co-conspirators at trial, and he would have testified to this had he been called at trial.  (*See id.*, doc. 22 at 135-58.)

According to Movant, he learned that the co-conspirators were using his name to submit fraudulent bills in 2012 from representatives of an Accountable Care Organization (ACO), of which he was a member.  (*See id.*, doc. 22 at 129-31.)  He subsequently told Brandt about what was going on, and Brandt learned that Movant's NPI number was being used by a co-conspirator to bill Medicare.  (*See id.*, doc. 22 at 131-32.)  Movant was furious, and he called the co-conspirator who was billing with his number after previously telling him that she was not; he made this call in

Brandt's presence.  (*See id.*, doc. 22 at 132-33.)  Movant also testified regarding the child support issue and the billing practices at Alpha Pulmonary.  At the time Movant was incarcerated for failing to pay child support, one of his practices had stopped paying his salary and child support because of a lawsuit, and when he formed Alpha Pulmonary, the physicians were seeing patients for free and were not being paid; as a result, his child support payments were not made.  (*See id.*, doc. 22 at 121-23.)  Counsel never discussed the child support issue with him, so he did not have an opportunity to explain it.  (*See id.*, doc. 22 at 121, 124, 159-60.)  Counsel also did not ask Movant questions or give him an opportunity to explain anything about Alpha Pulmonary, other than asking why Movant was billing while in jail.  (*See id.*, doc. 22 at 124, 126, 159-60.)

### 3.  Brandt

Brandt testified that at the time she worked for Movant, she had a consulting firm which provided services for physician practices.  (*See id.*, doc. 22 at 162.)  A practice of Movant's, in which he was one of five physicians, requested Brandt's assistance with Medicare credentialing.  (*See id.*, doc. 22 at 164.)   During the credentialing process, she obtained information from Medicare authorities showing that Medicare had been billed millions of dollars under Movant's NPI number and had paid millions of dollars to him.  (*See id.*, doc. 22 at 166-67.)  Brandt showed this information to Movant, who was extremely baffled and said it was a mistake; Brandt told him it was not a mistake and asked if someone else could be billing under him.  (*See id.*, doc. 22 at 168.)  Movant was upset and frustrated, and he asked questions that summed up to somebody else billing under his NPI number.  (*See id.*, doc. 22 at 168-69.)  She confirmed her affidavit testimony that Movant told her he was going to call one of the co-conspirators and asked Brandt to listen in on the phone call, which she did.  (*See id.*, doc. 22 at 169.)  During the call, Movant asked the co-conspirator about the billings and told her she should not be sending the bills under his NPI

number; the co-conspirator acknowledged that the billing should not be under Movant's NPI number and stated that it was a mistake and she would correct it. (*See id.*, doc. 22 at 169-71.)  The events of Brandt's testimony took place sometime before any search warrants were executed at Movant's practice, and before Movant and the co-conspirators were charged and indicted.  (*See id.*, doc. 22 at 163-64, 171.)   Neither the Government nor the defense contacted Brandt in connection with the case; had she been contacted, she would have conveyed what she testified to in her affidavit and at the hearing, and she would have been available to testify at trial.  (*See id.*, doc. 22 at 171-72.)

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality

of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Movant alleges three grounds of ineffective assistance of trial counsel in the underlying criminal case. (*See* No. 3:20-CV-318-B-BH, doc. 1 at 7.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses

on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.    <u>**Testifying at Trial**</u>

Movant first contends that counsel rendered ineffective assistance by "inaccurately advising him about the advantages and disadvantages of testifying in his defense." (No. 3:20-CV-318-B-BH, doc. 1 at 7.) He argues that counsel gave him "unreasonable, insufficient and improper advice concerning whether he should testify at trial[,]" and as a result, he "did not testify and the jury did not have the benefit of his testimony in determining whether he was guilty." (*Id.*)

At the evidentiary hearing, Movant testified that three days into trial, counsel told him that the Government did not have any evidence to show his guilt. (*See id.*, doc. 22 at 117.) Later that day, counsel then told Movant that he could not testify because the Government had not proven its case beyond a reasonable doubt and had not carried its burden, and that counsel had raised a reasonable doubt by showing forged signatures on forms submitted as evidence. (*See id.*, doc. 22 at 117-18.) He also testified that counsel told him the jury would not believe him because he was a foreigner, and that attorneys who allow their clients to testify were in cahoots with the Government or the Court. (*See id.*, doc. 22 at 118-19, 159.) Movant claimed that counsel never discussed the child support issue with him, and that he only discussed a part of the Alpha Pulmonary billing issue with him, for which Movant had provided an explanation. (*See id.*, doc. 22 at 121, 124, 126, 159-60.)

Counsel testified about his concern that if Movant testified, his child support issue and billing issues at Alpha Pulmonary would come into the trial and undermine the defense's theory

that Movant did not have a motive to commit Medicare fraud. (*See id.*, doc. 22 at 12-14, 30.) The issues were excluded on the day of trial, but based on the Court's statements, counsel understood that the issues could come in at trial if the door was opened by the defense, or the issues otherwise became relevant. (*See id.*, doc. 22 at 13.) Counsel testified that after the pretrial hearing, he told Movant about the impact those issues would have if they were allowed in at trial, that they were fortunate the issues were being excluded, and that that they were in trouble if the issues came in. (*See id.*, doc. 22 at 13, 21, 39, 63-64, 91.) He also testified that during trial, he and Movant discussed the burden of proof, credibility of the Government's witnesses up to that point, problems with the Government's case, and sufficiency of the evidence to satisfy the burden. He advised Movant that if the jury did not believe the Government beyond a reasonable doubt, he would be acquitted, but he did not quantify for Movant the likelihood of an acquittal or affirmatively represent that a reasonable doubt had been raised because he did not know what the jury would do, or and he did not provide Movant with his own assessment of the strength of the Government's case. (*See id.*, doc. 22 at 40, 44-45, 47, 58-62.) He testified that Movant said words to the effect that the Government had not met its burden beyond a reasonable doubt and agreed he would not testify. (*See id.* at 41, 60-61.)

### 1. Applicable Standard

Criminal defendants have the right to testify in their own defense. *See Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987). Only the defendant may waive this well-established right. *See United States v. Brown,* 217 F.3d 247, 258 (5th Cir. 2000). When a movant claims that trial counsel interfered with his right to testify and was ineffective, the claim is governed by the *Strickland* standard. *See United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012); *United States v. Mullins,* 315 F.3d 449, 452-53 (5th Cir. 2002); *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

In determining whether counsel's performance was deficient under the first *Strickland* prong, courts "must be highly deferential to counsel's trial strategy," keeping in mind that "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight."[4] *Mullins*, 315 F.3d at 453 (quoting *Robison v. Johnson*, 151 F.3d 256, 261 (5th Cir. 1998)) (internal quotation marks omitted).  The Fifth Circuit has rejected claims that counsel's trial strategy was deficient for failing to call the defendant as a witness at trial where counsel reasonably concluded that the defendant's testimony "may have done more harm than good." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *see also Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982).  As discussed, the prejudice prong of *Strickland* requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  It is a "heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Wines*, 691 F.3d at 604; *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

Relying on the Supreme Court's decision in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), Movant argues that a showing of prejudice under *Strickland* is unnecessary here because counsel's alleged interference with his right to testify constitutes the type of structural error that requires automatic reversal.  (No. 3:20-CV-318-B-BH, doc. 2 at 20-22.) *Weaver* involved a habeas claim that counsel rendered ineffective assistance by failing to object to the trial court's closure of the courtroom to the public during *voir dire*. *See Weaver*, 137 S. Ct. at 1905.  Noting that the

---

[4] A counsel's trial strategy, regardless of its merits, is not permissible where counsel "override[s] the ultimate decision of a defendant to testify contrary to his advice," however. *Mullins*, 315 F.3d at 453.  Movant admits that he agreed not to testify, albeit reluctantly, based on counsel's advice and recommendation.  (*See* No. 3:20-CV-318-B-BH, doc. 2 at 11, 63).  To the extent his testimony at the evidentiary hearing suggests otherwise, his claim still fails because he has failed to show prejudice for the same reasons discussed below.  (*See id.*, doc. 22 at 115, 156 (testifying that after the Government rested, he went to the lobby and "was just thinking about how did this – how did this happen, because [counsel] rested without calling me to the – you know," and that "[counsel] didn't want me to testify, believed that I shouldn't testify, and didn't call me to the stand to testify after, you know, my insistence that I really need to testify.")

underlying constitutional violation, i.e., the closure of the court, is treated as a structural error entitling a defendant to automatic reversal on direct review without a showing of prejudice, the issue was "whether invalidation of the conviction is required here [in the habeas context] as well, or if the prejudice inquiry is altered when the structural error is raised in the context of an ineffective-assistance-of-counsel claim." *Id.*

Analyzing the three general rationales for determining that an error is structural, the Supreme Court recognized, through example or precedent, the following structural errors in addition to the violation of the right to a public trial at issue in the case: (1) denial of a defendant's right to represent himself; (2) denial of the defendant's right to select his own counsel; (3) denial of an attorney to an indigent defendant; (4) failure to give a jury instruction on reasonable doubt; (5) a biased judge; and (6) the exclusion of jurors based on race. *See id.* at 1907-08, 1911. It also found that the underlying constitutional violation in the case did not always lead to a fundamentally unfair trial; nor did it always deprive the defendant of a reasonable probability of a different outcome. *See id.* at 1911. When such error is raised in a claim of ineffective assistance of counsel, *Strickland* prejudice is not automatic; instead, the movant bears the burden to show a reasonable probability of a different outcome. *See id.* The Supreme Court also entertained the defendant's alternative interpretation of *Strickland,* i.e., that a showing that the violation was so serious that it rendered the trial fundamentally unfair could also warrant relief, but it expressly did not answer whether that interpretation was correct. *See id.* at 1911-12.

Neither *Weaver* nor the Fifth Circuit have classified Movant's ineffective assistance claim as a structural error requiring automatic reversal. Even assuming that the underlying constitutional violation of the denial of the right to testify constitutes structural error requiring automatic reversal without a prejudice inquiry in the direct review context, under *Weaver*, Movant must still show

14

*Strickland* prejudice in the context of a claim of ineffective assistance of counsel because it does not appear that interference with that right always results in a fundamentally unfair trial or always deprives the movant of a reasonable probability of a different outcome.  *See, e.g.*, *United States v. Flores-Martinez*, 677 F.3d 699, 708-09 (5th Cir. 2012) (discussing limits to the tight to testify); *see also Weaver*, 137 S. Ct. at 1911.  In the absence of controlling precedent obviating or modifying the *Strickland* prejudice inquiry, the Court declines to apply *Weaver* as proposed by Movant in this habeas action.

### 2.  Deficiency

Here, counsel's decision not to have Movant testify was primarily based on his concerns about the evidence and testimony that would come in and undermine a defense theory and damage any credibility Movant may have had at trial.  (*See* No. 3:20-CV-318-B-BH, doc. 11 at 3-4; *id.*, doc. 22 at 13-14, 30.)  The record and transcript of the pre-trial hearing show that the Government moved to introduce evidence showing that Movant could not have provided certain Medicare services in the case, either because more than 24 hours in a day were billed, or he was at his clinic, at the hospital, or in jail during the times the services were allegedly provided by the entities involved in the case.  (*See* doc. 233; *see also* No. 3:20-CV-318-B-BH, doc. 11 at 38-41.)  The Government also argued that information about Movant's billing practices at his other practices, which were similar to the billing practices at the entities involved in the case, would be admissible to show knowledge and motive if Movant claimed that he lacked knowledge of the billing practices for the involved entities; the Court stated that it tended to agree with the argument, but indicated that it would not necessarily allow parts about Movant's jail time into the case.  (*See id.*, doc. 11 at 43-44.)  It indicated it was very hesitant to allow information about Movant serving time in jail to be introduced in the Government's *direct* case.  (*See id.*, doc. 11 at 42.)  The next day, the Court

excluded the evidence, stating that it was not persuaded that the evidence should come in at that point, but it could certainly be raised by cross-examination. (*See* doc. 400 at 13-14.) Additionally, in its notice of Federal Rule of Evidence (Rule) 404(b) and impeachment evidence, the Government notified Movant of its intent to introduce information regarding his family court proceedings if he testified or if counsel raised the issue of Movant's truthfulness. (*See* doc. 233 at 3-4.) The record therefore supports counsel's testimony about the potential admission of evidence relating to Movant's child support proceedings and billing at Alpha Pulmonary.

At the time of trial, counsel understood that the essential basis of Movant's potential testimony would be that he knew others were billing Medicare under his NPI number, but he did not know that the billing was fraudulent or that patients who received services did not need them. This understanding was confirmed at the evidentiary hearing, during which Movant testified that he lacked knowledge about the fraud and generally denied some, but not all, of the incriminating evidence and testimony against him. Based on the Court's rulings and statements relating to the excluded evidence, the Government's Rule 404(b) notice, and Movant's proposed trial testimony, it was reasonable for counsel to conclude that the evidence would have been admitted in the case, whether as impeachment, character evidence, or to show motive or knowledge, if Movant testified as anticipated, and that it would have undermined the defense's case.[5]

To the extent Movant argues that he had explanations for these two primary issues, and that counsel failed to discuss the issues with him, his allegations and testimony still do not show that counsel's strategy was constitutionally unreasonable. At the evidentiary hearing, Movant

---

[5] Movant argues that evidence from his family court proceedings would not have been admitted as impeachment or character evidence. (*See* No. 3:20-CV-318-B-BH, doc. 2 at 16-20.) He does not address the admissibility of the information from the family court proceedings to show motive, however. Nevertheless, his arguments hinge on presumptions regarding the Court's rulings on a later attempt by the Government to introduce the evidence at trial, and the Government's line of questioning. (*See id.*) Because it does not obviate the risks, from counsel's perspective, of calling him as a witness, Movant has not shown that counsel's strategy was objectively unreasonable, and his argument does not alter analysis of the reasonableness of counsel's trial strategy.

testified that he had not made the child support payments and that he did not have any income at that time, which could not only have undermined the defense theory that he lacked motive to commit Medicare fraud, but also would have fallen squarely within the Government's theory that Movant was involved in the charged Medicare fraud for "easy money." (*See* doc. 400 at 163.) Regarding billing at Alpha Pulmonary, Movant's explanations were limited only to billing on dates when he was in jail. (*See* No. 3:20-CV-318-B-BH, doc. 22 at 125; *see also id.*, doc. 15 at 3.) The Government also sought to introduce evidence of other billing practices at Alpha Pulmonary that tended to show knowledge by Movant, for which he provided no explanation. (*See* doc. 233; doc. 400 at 13-14.) Given Movant's damaging and incomplete explanations regarding these issues, considered together with counsel's understanding of his proposed testimony relating to his denial of knowledge and motive, and the resulting harm to the defense's case and Movant's credibility from the admission of the excluded evidence, Movant has failed to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" as to his trial strategy that Movant should not testify based on these problematic issues that were otherwise excluded from trial. *Strickland*, 466 U.S. at 689; *see also Garcia*, 762 F.2d at 1226.

Regarding counsel's recommendation to Movant about whether he should testify at trial, the parties agree that counsel advised Movant not to testify. The parties dispute the reasons counsel gave for his recommendation. It is not credible that after multiple days of testimony and evidence presented in the Government's case, counsel would have told Movant that the Government did not have any evidence to show his guilt. It also is not credible that counsel would have affirmatively told Movant that the Government had not carried its burden and that he had raised a reasonable doubt based on potential forged signatures; these determinations could only be made by the trier of fact. Nor is it credible that counsel would have told Movant that the jury would not believe him

if he testified because he was a foreigner, and that only lawyers in cahoots with the Government or the Court have their clients testify, especially given that Movant made these allegations for the first time at the evidentiary hearing.

Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, inconsistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds more credible the testimony of counsel that prior to and during trial, he discussed with Movant the Government's burden of proof, the credibility of the witnesses at trial, problems with the Government's case, and the sufficiency of the Government's evidence to satisfy its burden. The Court also finds more credible counsel's testimony that he explained to Movant that if the jury did not believe the Government's case beyond a reasonable doubt, Movant would be acquitted, and that he did not affirmatively tell Movant that a reasonable doubt had been raised because he did not know what the jurors would do or if they had a reasonable doubt. As discussed, counsel's trial strategy regarding the potential admission on cross-examination of damaging information if Movant testified was not objectively unreasonable. Accordingly, Movant has also failed to show that counsel's performance was constitutionally deficient as to counsel's advice on whether Movant should testify.

Movant has not shown that counsel's performance was deficient and not based on sound trial strategy in connection with Movant's right to testify in his own defense at trial. Because Movant has failed to satisfy the first prong of *Strickland*, his claim should be denied.[6]

### 3. Prejudice

Even if counsel's performance as to Movant's right to testify was deficient as alleged,

---

[6] To the extent Movant contends that counsel's trial strategy was deficient because Movant's testimony was necessary, or alternatively, would not have made the outcome any worse, he relies on the "distorting effects of hindsight," which courts must make every effort to eliminate. *Strickland*, 466 U.S. at 689. His arguments therefore do not warrant § 2255 relief, and claims based on them should be denied on this additional basis.

Movant must still show a reasonable probability that the outcome of proceedings would have been different, i.e., that the jury would have found him not guilty or that he would have received a lower sentence. *Strickland*, 466 U.S. at 694; *Wines*, 691 F.3d at 604.

Here, Movant argues that had he "testified, it's reasonably likely he would have been found not guilty." (No. 3:20-CV-318-B-BH, doc. 2 at 26.) Noting that "the Government's case was based entirely on circumstantial evidence[,]" Movant claims that, "[i]f [he] had testified, he could have presented his version of the events in his own words." (*Id.*) He continues, "The jury would then have been able to weigh his credibility against the Government's circumstantial evidence, and it would only have taken one juror to have been influenced by his testimony to have changed the outcome of the trial." (*Id.*) At the evidentiary hearing and in his affidavits, Movant testified that the witnesses at trial lied; he denied any knowledge of fraudulent activity and any testimony to the contrary, and he provided only conclusory, limited, or incredible explanations for some, but not all, of the incriminating evidence presented against him at trial. (*See id.*, doc. 2 at 64-68; *id.*, doc. 15 at 3; doc. 22 at 127-58.) Assuming that Movant's affidavit and hearing testimony would have been the testimony he offered at trial, he fails to show a reasonable probability that the outcome of his trial would have been different but for counsel's alleged deficiencies. At most, his testimony and allegations raise the possibility of a different result had Movant testified at trial. Because *Strickland* prejudice requires "a 'substantial,' not just 'conceivable,' likelihood of a different result," Movant has not satisfied his burden under *Strickland*, and the claim should be denied.[7] *Pinholster*, 563 U.S. at 189; *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) ("the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong.").

---

[7] Relying on *Weaver*, Movant alternatively argues that he can show *Strickland* prejudice without showing a reasonable probability of a different outcome absent counsel's deficiencies because counsel's alleged unreasonable advice resulted in a fundamentally unfair trial. (*See* No. 3:20-CV-318-B-BH, doc. 2 at 22-26.) As noted, *Weaver* entertained this proposed interpretation of *Strickland* prejudice, but expressly did not answer whether that interpretation was

### B.    <u>Hearsay Testimony</u>

In his second ground, Movant contends that counsel rendered ineffective assistance by "failing to object to testimony relaying inadmissible hearsay and violative of the Sixth Amendment's Confrontation Clause." (No. 3:20-CV-318-B-BH, doc. 1 at 7.) He alleges that "a government witness testified that he interviewed 10 or 12 patients who received home health care from the entities involved in this case . . . . [and] that some of the patients said they had no need for the home visits and they received no positive benefits from the home visits." (*Id.*) He argues that "[h]ad counsel objected to [this] admissible testimony, then, it's reasonably likely [Movant] would have been found not guilty," and that Movant's trial with the alleged "inadmissible testimony was fundamentally unfair." (*Id.*, doc. 2 at 31.)

The record shows that Government witness Denson Burkhead (Burkhead), a Medicare fraud investigator for a government contractor, testified about his 2011 investigation into potential Medicare fraud by Movant and health care practices associated with his name. (*See* doc. 397 at 115-31.) In context, the testimony at issue was as follows:

> Q. (By [the Government]) And you – again, you mentioned you interviewed Medicare beneficiaries. How many Medicare beneficiaries did you review [sic], if you recall, approximately?
>
> A. Maybe 10 or 12.
>
> Q. All right. And what kinds of things – without saying what they said, what types of questions did you ask them? What kind of information were you trying to get from them?
>
> A. If home visits had been made and, if so, how long the visits took; whether or not they received any benefit from those visits; if they could identify the persons who made the visits.
>
> Q. And based on your assessment from the beneficiary interviews, do you believe a benefit was occurring?

correct. *See Weaver*, 137 S. Ct. at 1911. Even if it is, Movant has failed to show that his trial was rendered fundamentally unfair based on counsel's trial strategy relating to his right to testify for the reasons already discussed.

> A.  Some of the patients said that they had no need for home visits and that they did
> not receive any positive benefit from the home visits that had been made.

(*Id.* at 127-28.)  Counsel did not object to this testimony.

Here, Movant contends that Burkhead's testimony about what some of the patients he interviewed said to him about not needing home visits and not receiving any positive benefits: (1) was offered for the truth of the matter asserted, therefore constituting inadmissible hearsay; and (2) involved testimonial statements by non-testifying witnesses and therefore violated the Sixth Amendment's Confrontation Clause.  (*See* No. 3:20-CV-318-B-BH, doc. 2 at 27-30; *id.*, doc. 14 at 16-18.)  The Government argues that Burkhead's testimony was not hearsay because it was offered to explain why Burkhead referred the results of his investigation into Movant and his affiliated practices to federal law enforcement, and not for the truth of what some of the patients told him during the investigation.  (*See id.*, doc. 10 at 25.)  According to the Government, because the challenged testimony was not hearsay and therefore did not violate Movant's right of confrontation, there was no basis on which counsel could have objected.  (*See id.*)

Assuming for purposes of this motion only that counsel rendered deficient performance by not objecting to Burkhead's testimony on hearsay and Confrontation Clause grounds, *Strickland* also requires a showing of prejudice.  To show prejudice, a movant must demonstrate a reasonable probability that, but for counsel's alleged deficient performance, the jury would have found him not guilty or he would have received a lower sentence.  *See Strickland*, 466 U.S. at 694.  Here, even if counsel had objected and the objection had been sustained, Burkhead also testified that a review of Movant's Medicare claims data showed excessive amounts of services on individual days that did not appear to be physically possible to complete, that he conducted interviews with patients, Movant, and two co-conspirators as part of his investigation, and that the investigation

developed information indicating that Medicare claims had been submitted for services that had not been provided, which led him to exercise the option to refer the results of his investigation to federal law enforcement. (*See* doc. 397 at 118-19, 126, 128.) Further, there was testimony at trial from other witnesses that multiple Medicare patients received home visits and services when they did not need them or were not home bound. (*See, e.g.*, doc. 398 at 161, 232-33; doc. 399 at 71-83, 197-201, 205-13.) Movant argues that unlike the unnamed patients mentioned in Burkhead's testimony, none of the other witnesses were disinterested parties in the case because they were a Medicare expert who was a government investigator and individuals involved in the conspiracy. (*See* No. 3:20-CV-318-B-BH, doc. 14 at 17.)

Movant's allegations in light of the testimony on the same subject that was admitted at trial amount to no more than speculation and conjecture, or a mere possibility that the outcome of his trial would have been different absent counsel's alleged deficiency, neither of which is sufficient to show *Strickland* prejudice. *See Crane*, 178 F.3d at 312; *United States v. Hall*, 455 F.3d 508, 522 (5th Cir. 2006) (quoting *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)). Nor do his conclusory statements that his trial was rendered fundamentally unfair as a result of counsel's alleged deficiency warrant § 2255 relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Movant has not satisfied his burden under *Strickland*, and the claim should be denied.

## C.    <u>Uncalled Witness</u>

In his third ground, Movant contends that counsel rendered ineffective assistance by "failing to interview Delia Brandt and call her as a witness." (No. 3:20-CV-318-B-BH, doc. 1 at 7.) He argues that he told counsel about Brandt, and had counsel interviewed her, "he would have

learned of [Movant's] reaction when he discovered that Medicare had been billed for millions of dollars under his provider number." (*Id.*, doc. 2 at 31.)  He alleges that, "[b]ut for counsel's deficient performance, the jury would have heard compelling evidence that [Movant] had no idea what his co-defendants were doing with his Medicare [NPI] number[,]" and "it's reasonably likely the jury would have found [Movant] not guilty." (*Id.*, doc. 2 at 34-35.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[W]hat investigation decisions are reasonable depends critically on such information [supplied by the defendant]." *Id.* Further, "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

Here, counsel testified in his affidavit and at the evidentiary hearing that Movant told him that Brandt had notified and talked to him about improper billing, and after Movant reviewed the billing with her, he called a co-conspirator in Brandt's presence to tell her to stop the improper billing. (*See* No. 3:20-CV-318-B-BH, doc. 11 at 5; *id.*, doc. 22 at 68-69.)  After hearing this information from Movant, counsel did not think it would help the defense, given that Brandt was able to identify millions of dollars in billing issues while working in Movant's practice for a limited period of time, and the suspect timing of the event. (*See id.*, doc. 11 at 5; *id.*, doc. 22 at 69-73, 76.)  Based on the information from Movant, and his belief that Movant's claim that he was unaware of the fraudulent billing at the time of the exchange with Brandt did not ring true, counsel

did not contact Brandt before deciding they would not use her for the defense. (*See id.*, doc. 22 at 71-73, 76, 80-83.) At the evidentiary hearing, counsel acknowledged that he could have made a more thorough assessment of the credibility of Movant's call with Brandt if he had interviewed her, but he also testified that nothing in her affidavit submitted in support of this habeas action changed his opinion regarding her. (*See id.*, doc. 22 at 83, 90.)

Assuming for purposes of this motion only that counsel rendered deficient performance when he failed to further investigate, interview, and call as a witness Brandt about the call she between Movant and a co-conspirator that she witnessed, Movant must also show prejudice under *Strickland*. He has not met this burden. Even if Brandt had testified at trial to her observations of Movant's perceived lack of knowledge of fraud, and even if her testimony would not have opened the door to the excluded evidence at the center of counsel's reason for not calling Movant to testify, Movant has not shown a reasonable probability that the result of his trial would have been different absent counsel's alleged deficiency. His conclusory allegations of *Strickland* prejudice raise no more than a possibility of a different outcome, and they are insufficient to warrant § 2255 relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Crane*, 178 F.3d at 312. Accordingly, the claim should be denied.

## IV.    RECOMMENDATION

The *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 10, 2020 (doc. 1), should be **DENIED** with prejudice.

24

**SIGNED this 3rd day of February, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


25